UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
S. KATZMAN PRODUCE, INC.,

FOR ELECTRONIC
PUBLICATION ONLY

             Plaintiff,

   - against –                                 **MEMORANDUM & ORDER**

SAM WON d/b/a SAM THE KOREAN,                   08-CV-2403 (KAM) (VVP)
individually and in any corporate or
partnership capacity,

             Defendant.
-------------------------------------X

MATSUMOTO, United States District Judge:

          Presently before the court is plaintiff's motion

for default judgment against defendant.  (Doc. No. 9.)

Plaintiff, a produce wholesaler, commenced this action on

June 16, 2008, against defendant Sam Won d/b/a "Sam the

Korean" ("defendant" or "Won"), for alleged violations of

the Perishable Agricultural Commodities Act of 1930

("PACA"), 7 U.S.C. §§ 499 *et seq.*  Plaintiff alleges that

defendant failed to pay for produce that it sold and

delivered to defendant.  Plaintiff's Complaint alleges

breach of a statutory trust imposed by PACA on the proceeds

of perishable produce, breach of contract, and other common

law causes of action.  Plaintiff seeks to recover for the

principal amount owed for the unpaid produce, pre-judgment

interest, attorney fees and costs.  (*See generally*, Doc.

No. 1, Complaint ("Compl.").)

Plaintiff seeks an order directing defendant to pay the principal amount of $43,676 for the unpaid produce, $8,777.54 in pre-judgment interest, and $6,380.00 in attorney fees and costs, for a total award of $58,833.54. (*See* Doc. No. 10, Declaration of Stephen Katzman ("Katzman Decl.") ¶ 10; Declaration of Timothy J. Fierst, Esq. ("Fierst Decl.") ¶ 6 and Ex. E, Attorney Billing Summaries.) Defendant has not appeared or opposed plaintiff's default judgment motion, despite receiving notice and an opportunity to do so. (*See* Fierst Decl., Ex. B, Affidavit of Service of the Complaint, dated August 22, 2008; Doc. No. 8, Affidavit of Service of the Scheduling Order, dated January 29, 2009; Doc. No. 13, Affidavit of Service of the default judgment motion, dated July 17, 2009.) For the reasons set forth herein, plaintiff's motion is granted in part and denied in part.

## BACKGROUND

### A. Factual Background

The following facts are taken from plaintiff's Complaint and the evidence submitted in support of its motion for default judgment. Plaintiff, S. Katzman Produce, Inc. ("Katzman Produce"), is a New York corporation that sells wholesale quantities of produce in

interstate commerce.  (Compl. ¶¶ 5-6.)  At all relevant
times, defendant was a purchaser of produce in wholesale
quantities and, therefore, a "dealer" in perishable
agricultural commodities subject to the PACA.  (*Id.* ¶ 7.)

From November 2007 through January 2008, at
defendant's request, plaintiff sold to defendant perishable
agricultural commodities worth a total of $43,676.  (*Id.* ¶¶
13, 17, 33 and invoices annexed to Complaint.)  Each sale
was memorialized by an invoice prepared by plaintiff and
payable by defendant.  (*Id.* ¶¶ 14-15, 20.)  Plaintiff
alleges that each invoice constituted a contract.  (*See id.*
¶¶ 37-40.)  According to plaintiff, defendant received the
produce without objection and failed and refused to pay for
it despite plaintiff's repeated demands.  (*Id.* ¶¶ 15-16,
19.)  Plaintiff alleges that, by failing to remit payment
for the produce, defendant breached his contract with
plaintiff and violated PACA.

Each of plaintiff's invoices notified defendant,
in writing, that plaintiff reserved its rights as a
beneficiary to a statutory trust pursuant to PACA.
Specifically, each invoice provides that,

> The perishable agricultural commodities
> listed on this invoice are sold subject to
> the statutory trust authorized by Section

3

5(c) of the Perishable Agricultural
Commodities Act 1930 (7 U.S.C. § 499(e)(c)).
The seller of these commodities retains a
trust claim over these commodities, all
inventories of food or other products
derived from these commodities and any
receivables or proceeds from the sale of
these commodities until full payment is
received.  In the event of the enforcement
of our trust claim, we will seek to recover
reasonable attorney's fees and the cost of
recovery.  Interest at the rate of 1.5% per
month added to unpaid balance, interest and
attorney's fees necessary to collect any
balance owe [sic] hereunder shall be
considered sums owing in connection with
this transaction under the PACA trust.

(*See* Invoices annexed to Compl.)

Plaintiff alleges that any proceeds realized by defendant from the sale of the produce constituted trust assets.  (*See* Compl. ¶ 23.)  Plaintiff further alleges that Mr. Won was in a position to prevent the dissipation and/or conversion of the trust assets, but failed to do so.  (*See id.* at ¶¶ 9, 27-28, 33-35.)

## B. Procedural History

Plaintiff served its Complaint on defendant on June 18, 2008.  (*See* Fierst Decl., Ex. B, Affidavit of Service of the Complaint.)  Defendant failed to answer or otherwise respond to the Complaint.  On December 15, 2008, plaintiff moved for default judgment (*see* doc. nos. 4-6)

and, on January 27, 2009, the Clerk of the Court entered a notation of defendant's default (doc. no. 7).

By Scheduling Order dated January 27, 2009, plaintiff was directed to serve and file documentation in support of its damages calculations on or before February 18, 2009, and defendant was directed to serve and file any response to plaintiff's submissions by March 11, 2009. The Scheduling Order also directed that any request for a hearing on damages be made by March 11, 2009. The January 27, 2009 Scheduling Order was served on defendant on January 29, 2009. (Doc. No. 8.) Having received no opposition from defendant or a request for a hearing, the court has reviewed only the plaintiff's submissions.

## DISCUSSION

### A. Default Judgment Standard

Defendant's default amounts to an admission of all well-pleaded allegations of liability, but is not considered an admission as to the amount of damages. *See Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Brigiotta's Farmland Produce & Garden Ctr., Inc. v. Przykuta, Inc.*, No. 05-CV-273, 2006 U.S. Dist. LEXIS 48004, at *3 (W.D.N.Y. Jul. 14, 2006).

Thus, before the entry of a final default judgment, plaintiff must prove damages. *See Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

The amount of damages may be ascertained through an evidentiary hearing at which the defendant has an opportunity to contest the claimed damages. *Greyhound*, 973 F.2d at 158; *see* Fed. R. Civ. P. 55(b) (on the matter of damages "[t]he court <u>may</u> conduct hearings . . . .") (emphasis added). The Second Circuit has held that "it was not necessary for the District Court to hold a[n evidentiary] hearing, as long as it ensured that there was a basis for the damages specified in a default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see Credit Lyonnais*, 183 F.3d at 155 ("The district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."). The court may rely "upon detailed affidavits and documentary evidence" in lieu of an evidentiary hearing. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).

Plaintiff has filed reasonably detailed affidavits with accompanying documentary evidence pertaining to the damages incurred. As previously mentioned, defendant has failed to appear or otherwise defend this action or oppose plaintiff's instant motion. Thus, the court is able to make an informed decision regarding plaintiff's claimed damages without an evidentiary hearing.

**B. Liability under PACA**

PACA was enacted "to regulate the sale and marketing of produce in interstate commerce." *Brigiotta's Farmland,* 2006 U.S. Dist. LEXIS 48004 *6 (citing *American Banana Co., Inc. v. Republic Nat'l Bank of New York*, 362 F.3d 33, 36 (2d Cir. 2004); *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co.*, Inc., 336 F.3d 410, 413 (5th Cir. 2003)). In relevant part, PACA provides that a dealer who receives goods or derives proceeds from a wholesaler's produce, is to hold those goods in trust for the benefit of the unpaid seller. *See* 7 U.S.C. § 499e(c)(2). That provision "imposes a statutory trust . . . on any perishable commodities or their derivatives received by a . . . dealer . . . and [on] any receivables or proceeds from the sale of such commodities or products for the benefit of

all unpaid sellers . . . until full payment is made." *D.M. Rothman & Co. v. Korea Commer. Bank*, 411 F.3d 90, 93 (2d Cir 2005) (internal quotation marks and citation omitted). The statutory trust is effective immediately upon receipt of the produce. *American Banana*, 362 F.3d at 38 (citing 7 U.S.C. § 499b(4)).

Under PACA, a seller must be paid promptly for a produce shipment. *See* 7 U.S.C. § 499b(4); *American Banana*, 362 F.3d at 36. The implementing regulation explicitly provides that a merchant must tender payment "within 10 days after the day on which the produce is accepted."[1] 7 C.F.R. § 46.2(aa)(5); *see Brigiotta's Farmland,* 2006 U.S. Dist. LEXIS 48004, at *7. A buyer's failure to make prompt payment gives rise to a seller's right to seek damages in either administrative proceedings before the United States Department of Agriculture ("USDA") or "in any court of competent jurisdiction." *Id.* (citing § 499e(a), (b)).

To establish the existence of a PACA trust, the seller must demonstrate that: (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission

---

[1] The default payment terms provided in the PACA regulations — payment within ten days of acceptance of produce — may be extended up to 30 days and still qualify for coverage under PACA's trust provision. *See* 7 U.S.C. § 499e(c)(3).

merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser of its intention to do so. *See* 7 U.S.C. § 499e; *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 08-CV-481, 2009 U.S. Dist. LEXIS 16940, at *13 (E.D. Ca. Mar. 5, 2009).

By virtue of defendant's default, plaintiff has established all five elements required to establish a statutory trust under PACA. First, plaintiff sold perishable agricultural commodities, namely, fresh fruits and vegetables, to defendant. (*See* Compl. ¶ 13 and Invoices annexed to Compl.) Second, defendant is a "purchaser of [p]roduce in wholesale quantities" and thus, a "dealer" within the meaning of PACA. (Compl. ¶ 7.) *See* 7 U.S.C. § 499a(b)(6) ("the term 'dealer' means any person engaged in the business of buying or selling in wholesale . . . quantities . . . any perishable agricultural commodity in interstate . . . commerce . . . .") Third, the transaction occurred in interstate commerce. (*See* Compl. ¶ 6.); *see generally, Produce Place v. United States Dep't of Agric.,* 91 F.3d 173, 175-175 (D.C. Cir. 1996) (discussing

interstate commerce requirement). Fourth, plaintiff has not received full payment for produce sold to defendant between November 2007 and January 2008. (Compl. ¶¶ 14-17, 19, 33.) Fifth, plaintiff notified defendant, in writing, of its intent to preserve the PACA trust benefits. (*See* Invoices annexed to Compl.) Indeed, plaintiff included the exact language prescribed by PACA on each invoice delivered to defendant.[2] Accordingly, plaintiff has established a statutory trust under PACA.

Plaintiff has also established that Mr. Won, individually, is liable under PACA. "[I]ndividual shareholders, officers and/or directors of a corporation that is subject to PACA can face individual liability for breach of their fiduciary duty to PACA Claimants." *Brigiotta's Farmland,* 2006 U.S. Dist. LEXIS 48004, at *12

---

[2] The notice requirement can be satisfied by a seller's "ordinary and usual billing or invoice statement[,]" provided it includes the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4).

(citations omitted).  Indeed, "[l]iability may be imposed on any individual who was in a position to control trust assets and allows the assets to dissipate." *Id.*, at *13 (citation omitted); *see Coosemans Specialities, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007) (same).

By virtue of defendant's default, the court deems admitted plaintiff's allegations that Mr. Won was in a position to prevent the dissipation and/or conversion of the trust assets, but failed to do so.  (*See* Compl. at ¶¶ 9, 27-28, 33-35.)  Accordingly, the court finds that Mr. Won breached his fiduciary duty as a PACA trustee and is personally liable for the failure to preserve PACA trust assets for plaintiff's benefit.  Thus, entry of default against defendant is warranted.

## C. Damages

### 1. Unpaid Invoices

Having established defendant's liability, the court must consider whether the evidence sufficiently supports the damages claimed by plaintiff.  In support of its motion, plaintiff relies on the declaration of its President, Stephen Katzman, as well as a copy of each invoice upon which payment is sought.  The invoices, which are dated between November 15, 2007 and January 4, 2008,

each reflect the sale of a certain quantity of produce to defendant. Mr. Katzman certifies, and the court's own calculations confirm, that the sum of the individual unpaid invoices totals $43,676.00. Accordingly, on the basis of plaintiff's submissions, the court awards plaintiff $43,676.00 in damages for the unpaid invoices.

**2. Interest**

"PACA does not itself create a right to pre-judgment interest." *Watermelon Express, Inc. v. Marine Park Farmer's Market*, No. 05-CV-4649, 2007 U.S. Dist. LEXIS 87530, at *11 (E.D.N.Y. Sept. 14, 2007), report and recommendation adopted, 2007 U.S. Dist. LEXIS 85081 (E.D.N.Y. Nov. 16, 2007). The Second Circuit has held that courts have broad discretion to award pre-judgment interest to PACA claimants. *See Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071-1072 (2nd Cir. 1995); *see also Watermelon Express*, 2007 U.S. Dist. LEXIS 87530, at *11 ("It is within the court's discretion to award pre-judgment interest on a PACA claim, and courts in this jurisdiction have done so based on congressional intent to protect agricultural suppliers.") (collecting cases).

In seeking pre-judgment interest, plaintiff relies on the following language of its invoices: "Interest at the rate of 1.5% per month [shall be] added to unpaid balance . . . ." (*See* Katzman Dec. ¶ 9 and Invoices annexed to Compl.) In support of its request, plaintiff has submitted a chart which, among other things, sets forth the amount of interest owed on each unpaid invoice. The total amount of pre-judgment interest sought is $8,777.54. From the record before the court, however, it does not appear that the parties expressly agreed to an award of interest.

The court finds that the terms set forth in plaintiff's invoices are enforceable. Between merchants such as plaintiff and defendant, "inclusion of terms in the seller's invoice, without protest from the buyer on receipt, makes the invoice terms the terms of the contract." *Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr.*, No. 04-CV-2666, 2005 U.S. Dist. LEXIS 8976, at *9 (S.D.N.Y. May 16, 2005) (in a PACA case, granting plaintiff-seller, *inter alia*, interest as specified in its invoices, which had been accepted by defendant-buyer without protest) (citing N.Y. U.C.C. § 2-201(2)); *Dayoub Mktg., Inc. v. S.K. Produce Corp.*, No. 04-CV-3125, 2005

U.S. Dist. LEXIS 26974, at *14 (S.D.N.Y. Nov. 9, 2005)

(accord); *see Brigiotta's Farmland*, 2006 U.S. Dist. LEXIS

48004, at *15-16 (awarding pre-judgment interest at a rate

specified in the seller's invoices, to which the defendant

had not objected).

There is no indication that defendant ever

objected to the terms of plaintiff's invoices or that

the terms were otherwise altered.  The court notes

that "no matter how onerous the terms may be, there is

no indication that the service charge of 1.5% per

month, or 18% per annum, is outside the range of trade

practice."  *Brigiotta's Farmland*, 2006 U.S. Dist.

LEXIS 48004, at *18 (citing *Dayoub Mktg.*, 2005 U.S.

Dist. LEXIS 26974, at *6 (awarding pre-judgment

interest on unpaid invoices for produce sales at rate

of 1.5% per month); *Morris Okun, Inc. v. Harry

Zimmerman, Inc.*, 814 F. Supp. 346, 351 (S.D.N.Y. 1993)

(enforcing contractual interest rate of 1.25% per

month on unpaid invoices in PACA case)).  Accordingly,

the court finds that plaintiff is entitled to pre-

judgment interest at the rate of 1.5% per month

specified in its invoices.  Plaintiff is thus awarded

$8,777.54 in pre-judgment interest.

### 3. Attorney Fees and Costs

"As with pre-judgment interest, PACA does not create a right to attorney's fees." *Watermelon Express,* 2007 U.S. Dist. LEXIS 87530, at *13 (citing *Top Banana*, 2005 U.S. Dist. LEXIS 8976, 2005 WL 1149774, at *2). Nonetheless, "contractual provisions for attorney's fees are enforceable under PACA." *Brigiotta's Farmland*, 2006 U.S. Dist. LEXIS 48004, at *19 (citing *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 631 (11th Cir. 2004); *Fishgold v. OnBank & Trust Co.*, 43 F. Supp. 2d 346, 351 (W.D.N.Y. 1999); *E. Armata, Inc. v. Platinum Funding Corp.*, 887 F. Supp. 590, 594 (S.D.N.Y. 1995)).

In seeking attorneys' fees and costs, plaintiff relies on the following language of its invoices: "In the event of enforcement of our trust claim, we will seek to recover reasonable attorney's fees and the cost of recovery." (*See* Katzman Dec. ¶ 9 and Invoices annexed to Compl.) Absent any indication that defendant objected to this provision or that this term was otherwise altered, it is enforceable. *See Brigiotta's Farmland*, 2006 U.S. Dist. LEXIS 48004, at *19 (finding enforceable an attorney's fees provision set forth in the seller's invoices); *see also Coosemans Specialties*, 485 F.3d at 709 ("we agree with our

sister circuits that where the parties' contracts include a right to attorneys' fees, they can be awarded . . . under PACA."); *Cf. Watermelon Express,* 2007 U.S. Dist. LEXIS 87530, at *15 (declining to award attorney's fees where there was "no mention" of attorney's fees in the seller's invoices).  "However, as with any case in which a district court must consider a statutory or contractual entitlement to attorney's fees, only such fees as are reasonable under the circumstances will be awarded." *See Brigiotta's Farmland*, 2006 U.S. Dist. LEXIS 48004, at *19.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  In the Second Circuit, a party seeking an attorney's fees award "must document the application with contemporaneous time records . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983); *see McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98 (2d Cir. 2006) (citing *Carey* with approval).  Attorney fee applications that do not contain such supporting data "should normally

16

be disallowed." *Carey*, 711 F.2d at 1154; *see Kingvision v. Jasper Grocery*, 152 F. Supp. 2d 438, 443 (S.D.N.Y. 2001) ("failure to support a fee application with [such] records generally results in denial of any award.").

Here, plaintiff seeks $6,070.50 in attorney fees. In support of its application, plaintiff has provided invoices from its counsel dated July 3, 2008, August 1, 2008, September 17, 2008, October 10, 2008 and February 10, 2009. (*See* Fierst Dec., Ex. E.) With the exception of the February 10, 2009 invoice, there is no indication from the other invoices of the number of hours expended for each billable task or the hourly rate charged. Nor does plaintiff explain why this information is present in its February 10, 2009 invoice and missing from the rest. Because a party seeking attorney's fees must submit such information, *see Carey*, 711 F.2d at 1154, and because plaintiff has had an opportunity to provide the same to the court or explain its absence, plaintiff's request for fees based on the July 3, 2008, August 1, 2008, September 17, 2008, and October 10, 2008 invoices is denied.

As properly detailed in the February 10, 2009 invoice, plaintiff was billed $4,216.50 for 10.80 hours expended by two attorneys whose initials are "MP" and "JK."

Plaintiff's motion papers, however, fail to identify the two attorneys, their positions (*i.e.* partner or associate), professional experience, and their hourly billing rates. A review of the February 10, 2009 invoice suggests that MP's hourly rate is $215 and JK's is $485.

In determining whether these rates are warranted, the court must determine "'what a reasonable, paying client would be willing to pay,'" in this district "given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *See Simmons v. New York City Transit Auth.*, No. 08-4079-cv, 2009 U.S. App. LEXIS 17079, at *7 (2d Cir. Aug. 3, 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 112, 118 (2d Cir. 2007)). The Second Circuit recently held in *Simmons* that "a district court must first apply a presumption in favor of application of the forum rule", under which "district courts are directed to calculate attorney's fees based on the rates prevalent in the forum in which the litigation was brought." *Simmons*, 2009 U.S. App. LEXIS 17079, at *2, 11-12. "[T]o overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just

possibly) produce a substantially better net result." *Id.*, at *12.

The court finds that although MP's $215 hourly rate is reasonable, JK's $485 hourly rate is in excess of "what a reasonable, paying client would be willing to pay" in this district for similar representation. *See Arbor Hill,* 493 F.3d at 112. Thus, in the absence of information regarding the qualifications and experience of the attorney identified as "JK," the court reduces JK's hourly rate to $215. *See Palmareal Produce Corp. v. Direct Produce # 1, Inc.*, No. 07-CV-1364, 2008 U.S. Dist. LEXIS 109440, at *11- 12 (E.D.N.Y. Mar. 31, 2008) (in PACA case, observing that hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates and $200 to $250 for senior associates) (citing *Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050, 2006 U.S. Dist. LEXIS 8716, 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006)). Plaintiff has not attempted to "persuasively establish" that the higher rates sought are justified, let alone specify counsel's legal experience. *See Simmons*, 2009 U.S. App. LEXIS 17079, at *12.

The court further finds that the 10.8 hours detailed in the February 10, 2009 invoice do not appear excessive, redundant, or otherwise unnecessary. *See Hensley*, 461 U.S. at 434. Accordingly, the court awards plaintiff $2,322.00 in attorney fees for 10.8 hours, at a rate of $215 per hour.

Additionally, the court has examined plaintiff's request for costs and the documentary evidence submitted in support thereof. The court finds that plaintiff has incurred a total of $305.00 in costs as follows: $55.00 in photocopying costs and $250.00 in process server fees. (*See* Fierst Decl., Ex. E.) Accordingly, plaintiff is awarded costs in the total amount of $305.00. *See Brigiotta's Farmland*, 2006 U.S. Dist. LEXIS 48004, at *28 (awarding photocopying costs and process server fees).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment is granted in part and denied in part. Plaintiff is awarded $43,676.00 as the principal amount for unpaid produce, $8,777.54 in pre-judgment interest, $2,322.00 in attorney fees and $305.00 in costs, for a total award of $55,080.54. The Clerk of the Court is

20

respectfully requested to enter judgment in plaintiff's

favor accordingly, and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       August 7, 2009


                                    _____  /s/_____ _____
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York